**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TRAVIS E. LEE-EL,

    Petitioner,

    v.

    Civil Action No.: BAH-21-1865

STATE OF MARYLAND,

    Respondent.

**MEMORANDUM OPINION**

Self-represented Petitioner, Travis E. Lee-El ("Petitioner"), filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he challenges the validity of his convictions and sentence in the Circuit Court for Prince George's County, Maryland, for thirteen counts related to the sexual abuse of a minor.[1]  ECF 1.  The Petition is fully briefed.  ECFs 1, 7, 17, 19.  Upon review of the submitted materials, the Court finds that no hearing is necessary.  Loc. R. 105.6 (D. Md. 2023); Rules 1(b) and 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  For the reasons set forth below, the Petition will be DENIED.

---

[1] Petitioner named the State of Maryland as Respondent.  ECF 1, at 1.  According to the online records of the Maryland Department of Public Safety and Correctional Services, Petitioner is currently serving his prison sentence at the Western Correctional Institution in Cumberland, Maryland, where Ronald S. Weber is the Warden.  ECF 7, at 3 n.1; *see Incarcerated Individual Locator*, Md. Dep't of Pub. Saf. & Corr. Servs., https://www.dpscs.state.md.us /inmate/search.do?searchType=detail&id=879907858 (last visited Feb. 6, 2024).  Warden Weber, therefore, would be the proper primary Respondent in this action.  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (stating that, in a federal habeas case, "the proper respondent is the warden of the facility where the prisoner is being held").  This issue, however, is mooted by the Court's dismissal and closure of the case.

## I.   BACKGROUND

### A.  Convictions and Sentence

On May 29, 2014, a jury in the Circuit Court for Prince George's County found Petitioner guilty of one count of sexual abuse of a minor, five counts of second-degree sex offense, four counts of third-degree sex offense, one count of sodomy, one count of fourth degree sex offense, and one count of second-degree assault, relating to the abuse of Petitioner's 10-year-old cousin. ECF 8-1, at 76, 161–62.  The following relevant facts, as described by the Appellate Court of Maryland (the "Appellate Court"),[2] were adduced at trial:

> On June 1, 2013, the victim, D.F., was staying at her father's home in Prince George's County, when Travis Lee, cousin of the victim's father, came to visit.  Lee was 49 years-old at the time of the events.  He arrived at the house drunk around midnight.  The victim's father told Lee that he could stay over, and then went to bed.  Although D.F. had her own bedroom in her father's house, she stayed up with Lee watching television in the living room on the night of the incident.

> When Father awoke around 4:30 am, he saw Lee and the victim asleep on different parts of the sectional sofa.  Father went back to sleep.  When he awoke again between 7:30 and 8:30, he got his daughter up and ready to go to her mother's house, and Lee parted company with them.

> After D.F. was dropped off at her mother's home in Baltimore, she told her mother about the abuse.  D.F. said that Lee made her touch his private parts and fondled her private parts and anus.  She told her mother that "Travis had sex with her."  According to Mother's testimony, this is not something D.F. would say.  Mother averred that her daughter had "a sad look, . . . like she did something wrong.  She had a look [like] she did something bad, . . . [or that] something bad happened to her."  Father and Mother immediately took their daughter to the Sinai Hospital near the mother's house in Baltimore.

> At the hospital, the victim told the police that she was sitting on the couch watching cartoons when Lee came over and started touching her on her legs.

---

[2] At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland and the Court of Special Appeals was renamed the Appellate Court of Maryland.  The name change took effect on December 14, 2022.  This was a change in name only and does not affect the precedential value of the opinions of the two courts issued before the effective date of the name change.

Although the victim did not use the following terms, she said that Lee made oral contact with her breast and legs and forced anal penetration with his penis and fingers. He also forced digital vaginal penetration.

Ms. Paulette Dendy, a SAFE nurse, was accepted as an expert forensic nurse.[1] She saw the victim on June 3, 2013, two days after the assault. The victim reported pain in the rectal area and vaginal area. There was swelling of the labia and a tear in the rectum, both indicative of trauma. The forensic nurse took an oral swab, took an external anal/perianal swab, and prepared a sexual assault kit.

Detective Jennifer Rio of the Prince George's County police department sex abuse unit obtained an arrest warrant for Lee after she met with the victim and her parents on June 3rd. Lee was indicted on several counts of sexual offense in the second- and third-degree, rape, sodomy, assault, and child abuse, and a trial was held on May 28 and 29, 2014. D.F. and her mother and father testified to the above events at trial, where D.F. specifically identified her abuser as "Cousin Travis." She also indicated that Lee made oral contact with her vagina and anus. Mother testified that D.F. was developmentally delayed by about two years. She characterized her daughter as autistic, meaning that she lacked socialization skills and that her ability to express herself was not at the normal level for a child her age.

Ms. Nicole Miulli was accepted as an expert in serology and testified that the victim's anal swab was positive for sperm. The serologist confirmed the positive result with a visual microscope test, which indicated the presence of approximately two sperm.[2] She testified that the length of time that sperm stays around depends on if the victim washes, wipes, or used the bathroom "and how many days it's been since the exam was completed."[3] Ms. Miulli stated that there was no other useful evidence from the other swabs taken during the sexual assault forensic examination. The serologist then sent the anal swab for DNA analysis along with swabs from the victim and Lee for comparison.

Ms. Christina Tran, an expert in forensic DNA analysis, tested the swabs and reported results for two different cell types: epithelial cells and sperm cells. Ms. Tran testified that the epithelial fraction of the DNA from the anal swab was consistent with the victim's DNA. Lee was excluded as a contributor to this portion of the sample.[4] With respect to the sperm fraction, the DNA was again consistent with the victim, and Lee was again excluded as a contributor to the DNA profile that Ms. Tran obtained. She stated that she found no male contributor for either of the two samples. When questioned about this discrepancy—i.e. how the tests could indicate a female contributor to sperm DNA—Ms. Tran said that it was possible there was so much epithelial DNA from the victim in the sample that it masked any other DNA.

---

[1] SAFE is an acronym for sexual assault forensic examination—a type of forensic examination that collects potential biological evidence on the victim's body. SAFE

nurses also document any injuries and bruises that the victim may have experienced.

[2] Preliminary analysis of the vaginal swab indicated the presence of seminal fluid; however, when Ms. Miulli conducted further testing, neither sperm nor seminal fluid was found in the sample.

[3] Nurse Dendy testified that D.F. had bathed, defecated, and wiped several times between the date of the incident and date of the SAFE examination.

[4] Ms. Tran described the DNA profile terminology as follows: "Included means that it's possible [a person] could have contributed to the sample. Excluded means that [a person] could not have contributed to that sample. . . . When you say inclusion or exclusion it's based off of the DNA profile that we obtained for that particular sample."

ECF 8-1, at 77–80.

At the close of the State's case Petitioner moved for judgment of acquittal on count two, second-degree rape, which was granted. ECF 8-1, at 80. The jury returned a verdict of guilty on all remaining charges. ECF 8-1, at 239. On August 8, 2014, the court sentenced[3] Petitioner to one hundred twenty-five (125) years of imprisonment.[4] ECF 29-3, at 9–10.

---

[3] The sentencing court originally mistakenly sentenced Petitioner on six counts of second-degree sex offense, not five, and on three counts of third-degree sex-offense, not four. ECF 8-1, at 21–22. On September 4, 2014, the court issued an order correcting the sentence. *Id.* The total aggregate sentence imposed was not affected by this error. *Id.*

[4] As described by the Appellate Court:

> The court sentenced Lee as follows:
> Count 1:        Sex abuse of a minor: 25 years
> Counts 3-7:     Second-degree sex offense: 20 years, consecutive
> Counts 8-11:    Third-degree sex offense: merged with Counts 3,4,5,6 and 7
> Count 12:       Sodomy: 10 years, concurrent to Count 3
> Count 13:       Fourth-degree sex offense: merged with Counts 3,4,5,6 and 7
> Count 14:       Second-degree assault: merged with Counts 3,4,5,6 and 7

ECF 8-1, at 80.

**B. Direct Appeal**

Petitioner filed a direct appeal to the Appellate Court , in which he asserted four errors: (1) that the trial court erred in allowing the state to misrepresent the expert testimony concerning DNA evidence; (2) the second degree sex offense convictions based on anal and vaginal digital penetration should be vacated because they are unlawful under the instructions given by the court; (3) the trial court erred in sentencing because the conviction for sodomy merges into the conviction for second degree sex offense for anal intercourse; and (4) the trial court erred in limiting the defense's cross-examination of the victim's mother about a prior occurrence of sexual abuse of D.F.  ECF 8-1, at 76.

On January 19, 2016, the Appellate Court vacated the sentence for sodomy as it merged with the second-degree sex offense but affirmed the convictions and sentence in all other respects. *Id.* at 75–95.  On the first question, relating to the prosecutor's characterization of the DNA evidence in closing,[5] the Appellate Court held the circuit court did not abuse its discretion in overruling Petitioner's objection at trial because the "prosecutor accurately summarized the DNA expert's testimony and argued a reasonable inference based on other testimony at the trial."  ECF 8-1, at 85.  On the second question, the Appellate Court held that because the Petitioner did not move for judgment of acquittal on the second- and third-degree sex offenses, and because he did not object to the verdict sheet given to the jury or object to the verdicts when returned by the jury, he had failed to preserve his claim for review.  ECF 8-1, at 87 (noting also that Petitioner did not ask the Appellate Court to engage in plain error review).  Finally, on Petitioner's final issue, the

---

[5] In closing, when discussing the DNA analysis of the sperm sample, the prosecutor said that "[t]here was too much of [D.F.]'s DNA on that profile or on that sample I should say, to determine whose DNA it was.  It's not that because it wasn't [the Petitioner's], [Ms. Tran] couldn't determine who it was."  ECF 8-1, at 85.

Appellate Court held the circuit court did not abuse its discretion by restricting cross examination of the victim's mother about an alleged prior assault the victim suffered prior to the incident in this case because the trial court properly held the line of questioning was barred by Maryland's rape shield law.  ECF 8-1, at 89–95.

Petitioner did not seek further review with the Supreme Court of Maryland due to what Petitioner previously alleged was a failure on the part of his appellate counsel to inform him that Petitioner had lost his appeal.  *See* ECF 8-1, at 139 (indicating in a letter from the Office of the Public Defender that Petitioner's counsel neglected to inform Petitioner of the Appellate Court decision in time to appeal, but notifying Petitioner he could file a belated writ or he could indicate this error in his post-conviction petition).

### C.  State Post-Conviction Proceedings

On November 21, 2016, Petitioner filed a self-represented petition for post-conviction relief in the Circuit Court for Prince George's County pursuant to the Maryland Uniform Post-Conviction Procedure Act, Md. Code Ann., Crim. Proc. ("CP") §§ 7-101 to 7-204.  ECF 8-1, at 97–100.  He raised three claims: (1) "ineffective assistance of counsel [for] failure to object to instructions"; (2) "failure to properly argue a[] particularized motion for judgment of acquittal"; and (3) "prosecutorial misconduct [related to] closing arguments."  ECF 8-1, at 97–99.

On December 27, 2019, Petitioner filed a supplemental petition for post-conviction relief, raising seven additional issues.  *See* ECF 8-1, at 101–26.  In that supplement he argued: (1) the State failed to prove "every fact necessary to constitute the crime"; (2) his right to a speedy trial was denied; (3) ineffective assistance of pre-trial counsel, trial counsel, and appellate counsel; (4) he was denied due process; (5) the DNA evidence was insufficient to sustain a conviction because he was excluded as a contributor of the sperm sample; (6) prosecutorial misconduct for showing

enlarged photographs during closing argument; and (7) ineffective assistance of counsel for failure to effectively cross examine the witnesses and failure to argue that the State did not meet its burden of proof and that the Court denied him a fair trial by limiting inquiry on cross of the victim's mother concerning prior sexual assault of the victim.  *Id.* at 101–26.

On April 24, 2019, Petitioner, through appointed counsel, Ms. Judith Jones,[6] filed a second supplemental petition.  *Id.* at 139–59.  In this petition, Petitioner asserted three claims: "(1) Ineffective assistance of counsel for failure to object to the jury instructions for second- and third-degree sex offenses, (2) Ineffective assistance of counsel for failure to file a motion for modification of sentence, and (3) Ineffective assistance of counsel for failure to file a motion/application for review of sentence by a three-judge panel."  ECF 8-1, at 151–59.

On December 9, 2019, Petitioner filed a third supplement on his own behalf in which he included additional issues related, in part, to his post-conviction counsel.  ECF 8-1, at 163–70. These included: (1) Petitioner's Sixth Amendment right to a fair and speedy trial was denied and the *Hicks* rule was violated based on the correct date of the first entry of appearance of counsel; (2) wrongful conviction based on insufficiency of the DNA evidence; (3) delay in post-conviction proceedings, including post-conviction counsel's delay in pursuing relief on Petitioner's behalf; and (4) ineffective assistance of post-conviction counsel.  *Id.*

The post-conviction court held a hearing on December 3, 2020.  ECF 17-2.  Between the pro se and counseled pleadings, Petitioner raised numerous claims.  The presiding judge attempted to clarify the issues that Petitioner intended the post-conviction court to adjudicate at the hearing. *Id.* at 10–16.  Additionally, before beginning the proceeding, Petitioner was asked if he wished to

---

[6] Petitioner's post-conviction counsel, Ms. Judith Jones, and trial counsel, Ms. Debra Jones, share the same last name.  To avoid confusion the Court will refer to Petitioner's counsel as either "trial counsel," "post-conviction counsel" or Ms. Jones when the context makes the meaning clear.

continue being represented by his post-conviction counsel.[7]  *Id.* at 4–8.  Petitioner stated that he wished to proceed with his post-conviction counsel because he agreed with her on the issues she wanted to raise, but Petitioner disagreed with post-conviction counsel's position on three issues and Petitioner wanted to be able to raise those issues on his own.  *Id.*  The judge indicated that Petitioner would not be able to be represented by post-conviction counsel for some issues and to represent himself for other issues, and ultimately four issues were agreed upon and Petitioner was allowed to place some additional comments on the record.  ECF 17-2, at 5–8.

The four allegations at issue were: (1) trial counsel was ineffective by failing to move for dismissal on the basis of a *Hicks* date violation; (2) petitioner was wrongfully convicted because the prosecutor engaged in misconduct by misrepresenting DNA evidence during closing argument; (3) trial counsel was ineffective by failing to object to incorrect jury instructions; and (4) trial counsel was ineffective by failing to file various post-trial motions.  ECF 8-1, at 185–86.  The Circuit Court stated that "[a]ll other allegations of error were expressly abandoned by Petitioner at the post-conviction hearing."  *Id.* at 186.  Ultimately, the Circuit Court denied all of Petitioner's post-conviction claims.  *Id.* at 185–204.

On April 20, 2021, Petitioner's post-conviction counsel filed an application for leave to appeal the denial of his petition, including a single claim regarding ineffective assistance of counsel for failure to object to the jury instructions for second- and third-degree sex offenses.  *Id.* at 205–18.  Petitioner also filed a pro se application for leave to appeal, adding the claims for ineffective assistance of counsel for failure to file a motion to dismiss under the *Hicks* rule, prosecutorial misconduct for misrepresenting the DNA evidence during closing argument,

---

[7] Additionally, Petitioner waived his claims of ineffective assistance of post-conviction counsel when he testified.  *See* ECF 17-2, at 25.

wrongful conviction based on DNA evidence, and ineffective assistance of counsel against pre-trial and trial counsel, and his post-conviction counsel, and abuse of discretion by the trial court for limiting cross examination of the victim's mother.  *Id.* at 241–52.  On December 16, 2021, the Appellate Court summarily denied Petitioner's Application for Leave to Appeal.  ECF 17-1, at 3–5.  When the Appellate Court summarily denies a post-conviction petitioner's application for leave to appeal, no further appeal may be pursued in the Supreme Court of Maryland.  *See Mahai v. State*, 255 A.3d 1050, 1053 (Md. 2021) (holding Supreme Court of Maryland does not have jurisdiction to review Appellate Court's discretionary denial of post-conviction application for leave to appeal post-conviction proceeding pursuant to CJP § 12-202).

On July 26, 2021, Petitioner filed the present petition for habeas relief.  ECF 1.  After the State submitted its limited answer and amended answer, ECFs 7, 17, Petitioner submitted his response in which he asserted various new arguments, including: (1) that he is of Moorish citizenship and did not consent to charges being brought against him, ECF 19, at 2; (2) that the victim was not credible, *id.* at 4; (3) that his trial counsel was ineffective for failing to investigate and consult experts or professionals with knowledge of the victim's mental health history, *id.*; and (4) that he was under duress during the post-conviction hearing and that he was "instructed at this hearing that [he] could not" raise all of his issues.  *Id.*, at 12–13.

## II.   LEGAL STANDARDS

### A.  Petitions for a Writ of Habeas Corpus

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a) (2018).  The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see*

*Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law;" or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice.  *Id.* at 692.  First, a petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" with a reliable result.  *Id.* at 687.  To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*  A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any

difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## III.  DISCUSSION

Petitioner asserts eight grounds for relief in his pro se petition: (1) ineffective assistance of counsel for failure to file a motion to dismiss based on the *Hicks* rule; (2) insufficient evidence to sustain his conviction based on the DNA and serology evidence; (3) prosecutorial misconduct during closing argument for misrepresenting the DNA evidence testimony; (4) error by the trial court in instructing the jury incorrectly on second- and third-degree sex offenses; (5) ineffective assistance of counsel for failure to object to the jury instructions on second- and third-degree sex offenses; (6) error by the trial court in limiting the defense's cross-examination of the victim's mother; (7) ineffective assistance of counsel for failure to file a motion for modification of sentence and a motion for review of sentence by a three-judge panel; and (8) ineffective assistance of post-conviction counsel.  ECF 1, at 2–16.  Under § 2254, "each ground for relief [is] an independent claim," and all claims in a petition must be exhausted.  *Samples v. Ballard*, 860 F.3d 266, 274 (4th Cir. 2017).

In Petitioner's Reply he seeks to include additional claims: (9) that he is of Moorish citizenship and did not consent to charges being brought against him, ECF 19, at 2; (10) that the victim was not credible, *id.* at 4; (11) that his trial counsel was ineffective for failing to investigate and consult experts or professionals with knowledge of the victim's mental health history, *id.*; and (12) that he was under duress during the post-conviction hearing and that he was "instructed at this hearing that [he] could not" raise all his issues.  *Id.* at 12–13.

The Court is mindful of the well-established maxim that *pro se* pleadings are "liberally construed and held to a less stringent standard than pleadings drafted by lawyers."  *Conway v.*

*Kijakazi*, Civ. No. 1:21-00502-JRR, 2023 WL 5153641, at *4 (D. Md. Aug. 10, 2023) (citation omitted); *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)).  "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available."  *Gray v. Wash. Metro. Area Transit Auth.*, Civ. No. DKC 16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999)), *aff'd*, 693 F. App'x 230 (4th Cir. 2017).  However, "the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court."  *Miller v. Jack*, Civ. No. 1:06CV64, 2007 WL 2050409, at *3 (N.D. W. Va. July 12, 2007) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990)), *aff'd*, 261 F. App'x 540 (4th Cir. 2008).

## A.  Procedural Default

As a threshold matter, Petitioners' claims raised for the first time in reply are beyond this Court's review.  The facts of these claims were known to Petitioner at the time he filed his petition for a writ of habeas corpus, and petitioner neither sought nor was granted leave to amend his original petition to add these claims.  *See* Loc. R. 112.1(a) (D. Md. 2023) ("Petitions for habeas corpus filed pursuant to 28 U.S.C. § 2254 and motions filed pursuant to 28 U.S.C. § 2255 shall be governed, respectively, by the Rules Governing § 2254 Cases in the United States District Courts and the Rules Governing § 2255 Proceedings in the United States District Courts"); *Rules Governing § 2254 Cases in the United States District Courts and the Rules Governing § 2255 Proceedings in the United States District Courts*, Rule 1 (c)(1) ("The petition must . . . specify all the grounds for relief available to the petitioner. . . .").

Even if this court were to interpret Petitioner's reply as an attempt to file a second or successive federal habeas petition, Petitioner failed to "obtain an order from the appropriate court

of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4)." *Rules Governing § 2254 Cases in the United States District Courts and the Rules Governing § 2255 Proceedings in the United States District Courts*, Rule 9. Therefore, the Court concludes that Grounds Nine, Ten, Eleven, and Twelve are procedurally defaulted.

As to Petitioner's original habeas claims, Respondent argues that Grounds Two, Three, Four, and Six are procedurally defaulted. ECF 17, at 60–64, 67–73, 74–76, 78–85. For the reasons indicated below, the Court concludes that Grounds Four and Six are procedurally defaulted and Grounds Two and Three are not.

A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Maryland Supreme Court by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. ("CJP") §§ 12-201, 12-301. To exhaust a claim through state post-conviction proceedings, a defendant must assert the claim in a petition for post-conviction relief filed in the circuit court in which the defendant was convicted within 10 years of the date of sentencing. *See* CP §§ 7-101 to 7-103. After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court. *Id.* § 7-109. If the Appellate Court denies the application, there is no further review available, and the claim is exhausted. CJP § 12-202.

14

Respondent argues that Grounds Two and Three are procedurally defaulted because Petitioner dismissed these claims at the post-conviction hearing. ECF 17, at 58, 67. The record is unclear on this point. At the start of the post-conviction hearing, the Court appeared confused by which issues were before it. ECF 29-4, at 4–7. The confusion stemmed from the disagreement between Petitioner and his post-conviction counsel on which claims to raise in the proceeding. *See* ECF 29-4, at 5–7. In his pro se supplement to his post-conviction counsel's supplemental petition, Petitioner claimed that his post-conviction counsel was ineffective for failing to raise all the issues Petitioner wished to be addressed. *See* ECF 8-1, at 164–70.

However, at the hearing, Petitioner indicated that he was satisfied with his post-conviction counsel's services overall and still desired that his post-conviction counsel raise the limited issues post-conviction counsel felt were meritorious. ECF 29-4, at 4–5. He also stated, unequivocally, that he still desired that his post-conviction counsel continue to represent him in the post-conviction proceeding.[8] *Id.* Petitioner also expressed a desire to raise a few issues on his own. *Id.* at 7. Ultimately, Petitioner elected to have his post-conviction counsel argue on his behalf and to also leave "some additional comments . . . on the record[.]" *Id.* at 25–26. When his counsel gave him the opportunity to say whatever more he wished to say during his direct examination, Petitioner added that he challenged the sufficiency of the evidence supporting his conviction because the DNA results excluded him as the contributor of the sperm sample (Ground Two), and also raised his prosecutorial misconduct claim alleging mischaracterization of the DNA evidence in closing argument (Ground Three). *See* ECF 29-4, at 37–40.

---

[8] Before his direct examination, Petitioner expressly disclaimed that he was continuing with any claim against his post-conviction counsel, Ms. Judith Jones. ECF 29-4, at 24.

The post-conviction court understood that all but four claims were expressly abandoned by Petitioner.  ECF 8-1, at 185–86 (highlighting the four preserved issues as: (1) "Trial counsel rendered ineffective assistance by failing to move to dismiss based on the Petitioner's trial being delayed in violation of his Hicks[] date"; (2) "Petitioner was wrongfully convicted on the basis of the DNA evidence as there was prosecutorial misconduct in mischaracterizing the expert testimony"; (3) "Trial counsel rendered ineffective assistance by failing to object to incorrect jury instructions"; and (4) Trial counsel rendered ineffective assistance by failing to file a motion for modification of sentence and/or review of sentence by a three-judge panel").  Because the record is nebulous as to dismissal of Grounds Two and Three,[9] the Court declines to find that these grounds are procedurally defaulted based upon the dismissal of them at the post-conviction hearing.

Next, in Ground Four Petitioner alleges trial error.  ECF 1, at 9–11.  Specifically, Petitioner argues that "several of the courts['] convictions were directly contrary to the courts['] binding instructions on the law."  ECF 1, at 9–10.  Respondent argues that Ground Four is procedurally defaulted because the Appellate Court dismissed Petitioner's Ground Four argument on a state procedural rule.  ECF 17, at 74–76.  A procedural default may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural

---

[9] Respondent also contends that Ground Three, alleging prosecutorial misconduct during closing argument, is procedurally defaulted because Petitioner did not file a petition for a writ of certiorari with the Supreme Court of Maryland on direct appeal.  ECF 17, at 72.  However, Petitioner claimed on direct appeal that the *trial court* erred by failing to grant his counsel's objection to the prosecutor's closing argument.  ECF 8-1, at 34.  Here, Petitioner claims that the prosecutor engaged in misconduct during the closing argument, which was raised as a separate claim in post-conviction proceedings.  ECF 8-1, at 109–12.  Petitioner exhausted his state remedies by including this claim in his application for leave to appeal.  *Id.* at 241–52.  Accordingly, the Court will address Ground Three on the merits.  However, to the extent Petitioner requests that this Court review the trial court's decision to overrule the objection to the prosecutor's closing statement, ECF 1, at 13, that argument is procedurally defaulted, as Respondent contends.  ECF 17, at 67–69.

rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted.").  As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (citing *Coleman*, 501 U.S. at 731–32).

Here, the Appellate Court concluded that Petitioner's trial counsel failed to object contemporaneously at trial to the jury instructions on second- and third-degree sex offense and, thus, waived any trial court error for appeal.  ECF 8-1, at 85–87; *see id.* at 87 n.8 (noting Petitioner did not ask the Court to engage in plain error review).  Petitioner did not appeal the Appellate Court's preservation holding to the Supreme Court of Maryland.  Because the Appellate Court clearly and expressly dismissed Petitioner's Ground Four claim for relief on a state ground and because Petitioner did not exhaust the issue on direct appeal by appealing the Appellate Court's preservation ruling to the Supreme Court of Maryland, it is procedurally defaulted.

Next, Respondent argues that Ground Six is procedurally defaulted because Petitioner failed to properly raise these claims with the state courts.  ECF 17, at 61, 79.  Ground Six alleges trial error as well.  ECF 1, at 12.  Specifically, Petitioner alleges the "trial court deprived [Petitioner] a fair trial by unduly limiting [his] attorney Ms. [Debra] Jones[*] enquiry on cross examination of the alleged victim's mother." *Id.*

When a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings,

or by failing to note a timely appeal to a state appellate court reviewing either, the procedural default doctrine applies. *See Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (declining to review a claim not raised in a petition for a writ of certiorari to the relevant state Supreme Court); *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (per curiam) (failure to raise a claim during post-conviction proceedings). As relevant here, a procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1).

Ground Six, alleging the trial court erred in limiting the cross-examination of the victim's mother, was raised in Petitioner's direct appeal and "finally litigated" there. ECF 8-1, at 89–95. Petitioner failed to seek a petition for a writ of certiorari with the Supreme Court of Maryland and, therefore, failed to exhaust this claim via direct appeal. Because Petitioner had "finally litigated" Ground Six on direct appeal, Petitioner was barred from raising this claim of error in the post-conviction proceeding. *Greco v. State*, 48 A.3d 816, 824 (Md. 2012) (noting Maryland's Uniform Post-Conviction Procedure Act "bars relief on the basis of allegations of error that have been 'finally litigated'"). "A claim of error is considered finally litigated when [the Supreme Court of Maryland] or the [Appellate Court] has rendered a decision on the merits thereof either on direct appeal or upon consideration of an application for leave to appeal filed pursuant to the Post Conviction Procedure Act." *Hunt v. State*, 691 A.2d 1255, 1276 (Md. 2023); CP § 7-106(c). In this case, Petitioner's Ground Six became "finally litigated" when the Appellate Court issued its

unpublished decision on direct appeal; yet, because Petitioner failed to file a timely writ of certiorari, Petitioner's unexhausted claim is procedurally defaulted.

Petitioner, nevertheless, requests that any procedural default be excused.  ECF 19.  If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent.  *See Murray*, 477 U.S. at 495–96; *Breard*, 134 F.3d at 620.  Petitioner attempts to establish excuse under both exceptions to the procedural default doctrine.

Under the first exception, "cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time."  *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).  To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494.

Petitioner argues his appellate counsel's failure to timely apprise him of the Appellate Court's January 19, 2016, decision on direct appeal "caused" him to not seek a writ of certiorari with the Supreme Court of Maryland.  ECF 19, at 9.  Petitioner attaches a letter his appellate counsel wrote to him, apologizing for the error and advising him to contact the post-conviction division of the public defender's office for assistance with filing a belated petition for a writ of certiorari with the Supreme Court of Maryland.  ECF 19-1, at 2–3.  Appellate counsel also indicated that counsel's error could be included in a post-conviction petition and indicated a willingness to testify at the hearing on Petitioner's behalf.  *Id.*  Petitioner also appears to fault his

appellate counsel for failing to continue to represent him by filing the petition for a writ of certiorari.  ECF 19, at 9.

In some circumstances, ineffective assistance of appellate counsel may excuse a procedural default.  However, "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986) (holding habeas petitioner's claim was procedurally defaulted when his counsel mistakenly omitted a particular claim from his petition for appeal); *see also Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* . . . [the Supreme Court] discern[s] no inequity in requiring him to bear the risk of attorney error that results in a procedural default."  *Murray*, 477 U.S. at 488.

Above, the Court discussed the lack of clarity surrounding Petitioner's waiver or preservation of Grounds Two and Three at the post-conviction hearing; but that confusion notably is not present as it relates to Petitioner's decision to waive any argument about the ineffectiveness of his appellate counsel.  Petitioner himself never raised the issue of appellate counsel during the hearing, *see* ECF 17-2, at 1–18, 26–27.  Petitioner consented to proceeding on four issues, none of which included the ineffectiveness of appellate counsel, and even when he was prompted to provide comments on the record during this direct examination, Petitioner spoke exclusively about the sufficiency of the DNA evidence, prosecutorial misconduct, and the *Hicks* date.  *See* ECF 17-2, at 35–42.

Furthermore, in Petitioner's application for leave to appeal from the post-conviction court's denial of post-conviction relief, it became even clearer that Petitioner had waived any claim of

ineffective assistance of counsel against appellate counsel, Mr. Kennedy and Mr. Saccenti. ECF 8-1, at 241–51. In Petitioner's supplemental application for leave to appeal, under a section entitled "Ineffective Assistance of Counsel," Petitioner specifically identified Mr. Denton (pre-trial counsel), Ms. Debra Jones (trial counsel), and Ms. Judith Jones (post-conviction counsel). ECF 8-1, at 248. Petitioner did not name Mr. Kennedy or Mr. Saccenti, and made no mention of appellate counsel error, indicating he affirmatively waived any such claim. *Id.* Thus, Petitioner's appellate counsel's error cannot serve as an excuse to procedural default, when there is no finding that appellate counsel was ineffective and when Petitioner clearly waived the issue, thereby depriving any state court of the opportunity to consider it.

Finally, Petitioner's claim that his appellate counsel failed to file the petition for a writ of certiorari on his behalf cannot serve as cause to excuse his default because a criminal defendant "has no [constitutional] right to counsel beyond his first appeal . . . ." *Coleman v. Thompson*, 501 U.S. 722, 756–57 (1991);[10] *see Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017) ("An attorney error does not qualify as 'cause' . . . unless [it] amounted to constitutionally ineffective assistance of counsel."); CJP § 12-201 (stating the Supreme Court of Maryland "*may* issue the writ of certiorari" (emphasis added)); *Vonoppenfeld v. State*, 454 A.2d 402, 405 (Md. App. 1983) ("The writ [of certiorari] then, is not a writ of right but issues if at all as a discretionary exercise."); *Walston v. Sun Cab Co., Inc.*, 298 A.2d 391, 396 (Md. 1973) ("[T]he General Assembly intended that the certiorari procedure was to provide for a discretionary appeal.").

---

[10] Petitioner does not argue that the ineffectiveness of his trial counsel should excuse the procedural default of Ground Four, claiming that the trial court erred in improperly instructing the jury on certain second- and third-degree sex offenses. If Petitioner had made this argument, the Court would have ultimately concluded that Ground Four lacked merit for the same reasons as Ground Five.

21

Next, Petitioner argues any procedural default should be excused as he is "actually innocent." ECF 19, at 3. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court recognized that in certain exceptional cases, a compelling showing of actual innocence would enable a federal court to consider the merits of a petitioner's otherwise defaulted claims. *Id.* at 324–25. In such a case, the Court held, new evidence may "establish sufficient doubt about [the petitioner's] guilt to justify the conclusion that his execution would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Id.* at 316 (emphasis in original). Petitioner's is not among these exceptional cases.

*New* reliable evidence of actual innocence creates a gateway for a habeas petitioner to present procedurally defaulted federal constitutional claims by allowing an equitable exception to the limitations provisions of 28 U.S.C. § 2244(d)(1) so as to prevent a fundamental miscarriage of justice. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). A petitioner meets the threshold requirement if he "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316.

Petitioner fails to meet the stringent requirements for the actual innocence gateway exception to procedural default.  He offers no new evidence of his actual innocence.  Petitioner argues that the DNA evidence offered at his trial proves his innocence; however, that evidence is not new and, therefore, cannot support a claim of actual innocence.  *See House v. Bell*, 547 U.S. 518, 537 (2006) (finding that viable actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial.").  More importantly, an argument as to the weight of that evidence was squarely presented to the jury at Petitioner's trial.  Though he questions the soundness of the jury's evaluation of that evidence, such a challenge does not constitute grounds to excuse default.  Since Petitioner fails to establish a viable excuse for the procedural default of Grounds Four or Six, the Court is barred from reaching the merits of these claims.

### B.  Merits Review

#### 1.   Ground One

In Ground One, Petitioner contends that his pre-trial counsel[11] provided ineffective assistance by failing to move to dismiss the charges based on the "*Hicks* Rule" which requires trial to be held within 180 days after the appearance of counsel or the defendant's initial appearance, absent postponement for good cause.  *See* CP § 6-103; Md. Rule 4-271 ("*Hicks* rule"); *State v. Hicks*, 403 A.2d 356, 360 (Md. 1979) (holding that dismissal is ordinarily required for violation of the time requirement); *see also Jackson v. State*, 300 A.3d 169, 174 (Md. 2023) (precluding dismissal as a remedy for *Hicks* violation where counsel for defendant expressly sought trial date exceeding the Hicks date).

---

[11] Petitioner was not represented by the same counsel for pretrial and trial proceedings.  ECF 8-1, at 187, 202.

Petitioner raised Ground One in his post-conviction petition and in his pro se application for leave to appeal, and therefore, this ground is exhausted and properly before the Court. ECF 8-1, at 103–104, 242–44. On January 16, 2014, Petitioner's pre-trial counsel entered a plea of "not criminally responsible." ECF 8-1, at 7. The docket sheet notes on January 22, 2014, that a competency evaluation had not been completed and that the Circuit Court found "good cause to continue the case beyond the 180-day requirement of MD Rule 4-271." *Id.* at 7–8. During post-conviction proceedings, Petitioner argued that he did not consent to his pretrial counsel entering the "not criminally responsible" plea and, therefore, no good cause should have been found to continue the case beyond the *Hicks* date. *See* ECF 8-1, at 191–93. However, Petitioner did not call his pre-trial counsel to testify at the hearing. *Id.* at 192. For this reason, and because of factual inaccuracies in Petitioner's testimony that called his memory into question, the post-conviction court made a factual determination that Petitioner failed to prove he did not consent to the "not criminally responsible" plea. ECF 8-1, at 194–95. Absent clear and convincing evidence to the contrary, the post-conviction court's factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Petitioner has provided no evidence to counteract this presumption. ECF 1.

The post-conviction court also concluded, based on the docket entries, that the trial date was reasonably continued beyond 180 days so that Petitioner's competency could be properly evaluated. ECF 8-1, at 192–93. The post-conviction court concluded that pretrial counsel did not perform deficiently because the requirements of the *Hicks* rule were properly and timely met. ECF 8-1, at 193. This Court is bound to defer to the post-conviction court's interpretation of the *Hicks* rule. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (holding that a state court's interpretation of state law binds a federal court sitting in habeas corpus).

Petitioner fails to establish that his pre-trial counsel's representation was deficient.  The post-conviction court's rejection of this claim was reasonable and consistent with well-established federal law.  This claim does not warrant federal habeas relief and will be denied.

### 2. Ground Two

In Ground Two, Petitioner argues the evidence was insufficient to sustain his conviction for various sex offenses because the serology screening excluded him as the contributor of the sperm sample.  ECF 1, at 4–6.  On this basis, Petitioner asserts that he was exonerated and is actually innocent.  *Id.*; *see also* ECF 19, at 3 (stating "the evidence ultimately exonerated the defendant").

"A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  This is so because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  *Id.*

Here, the Court cannot conclude that no rational trier of fact could have agreed with the jury.  While the sperm sample "excluded" Petitioner as the contributor, the sperm sample matched the victim's DNA, not another male contributor's DNA.  ECF 29-2, at 32.  The DNA expert offered a rationale to explain why a sperm cell would match a female child's DNA: the presence of the child's DNA overwhelmed or masked the minimal amount of male DNA.  ECF 29-2, at 33.  A rational jury could believe this, particularly given the breadth of other evidence supporting that a sexual assault occurred.

The victim's father's testimony demonstrated that Petitioner had the opportunity to abuse the victim, as Petitioner was alone with the victim in the living room from approximately 1:00 a.m. until 7:30 or 8:00 a.m., and Petitioner and the victim both slept on the living room sofa.  ECF

29-1, at 62–63.  The victim immediately reported the incident to her mother, who also testified to what her daughter told her occurred.  ECF 29-1, at 83.  The victim herself testified and named Petitioner as the one who engaged in cunniligus, analingus, anal penetration, and digital vaginal penetration.  ECF 29-1, at 105–119.  Her account was corroborated not only by the presence of a sperm cell, ECF 29-2, at 32, but also by the nurses who examined her and found swelling of the labia and a tear in the rectum, both indicative of trauma.  ECF 29-1, at 130–31.

A reasonable jury could find the victim credible and believe based upon the presence of sperm, the physical signs of trauma, the victim's immediate reporting of the incident to her mother, the victim's own testimony, and the opportunity Petitioner had to commit the offense that: (1) the sexual abuse offenses occurred; and (2) Petitioner was the perpetrator.  Petitioner's Ground Two is dismissed.

### 3.    Ground Three

In Ground Three, Petitioner contends that the prosecutor engaged in misconduct during her closing argument by misrepresenting the DNA evidence.[12]  Petitioner raised Ground Three in his petition for post-conviction relief.  ECF 8-1, at 109–12.  The post-conviction court denied the claim, relying on the Appellate Court's dismissal of the similar trial error raised on direct appeal. *Id.* at 195–99.  The post-conviction court ruled that this allegation of prosecutorial misconduct had already been litigated on appeal and could not be raised again at post-conviction.  ECF 8-1, at 197–98.

---

[12] Petitioner also argues the prosecutor's use of a slideshow during closing argument was prejudicial and intended to inflame the passions of the jurors.  ECF 1, at 9.  Petitioner does not indicate what was shown in the slide show and this argument was not raised in either the direct appeal or post-conviction appeal.  It is therefore procedurally defaulted.  *See supra* III.A.

26

On the second day of Petitioner's trial, the state called forensic chemist, Christina Tran ("Tran"), to testify.  ECF 29-2, at 24–36.  Tran testified that she conducted DNA testing on the anal/perianal swabs from the victim's sexual assault kit and compared them with swabs from the victim and Petitioner.  *Id.* at 31.  The anal/perianal swab contained epithelial cells and sperm cells. *Id.* at 32–33.  The epithelial cells were consistent with the victim.  *Id.* at 32.  The sperm cells yielded a DNA profile consistent with the victim, and the Petitioner was excluded as a possible contributor for the sperm cells.  *Id.*  When asked how it was possible that the victim's DNA was consistent with the sperm cells, Tran testified that it was possible that the victim's epithelial cells were masking any possible male DNA that was present.  *Id.* at 33.  Tran further explained that "during serology, sperm is noted" and that she performed a "differential extraction," a method by which she attempts to "separate sperm versus epithelia cells.  It's not 100 percent exact science. It's an attempt to separate sperm versus epithelia."  *Id.* at 34.

During closing argument, the prosecutor made an argument utilizing Tran's testimony (to which Defense counsel objected):

> Let's talk about not a contributor.  You heard from Christina Tran.  What did she tell you?  She told you, she had to exclude the Defendant, because she could not get a male profile.  She told you that females don't make sperm.  There was too much of [the victim's] DNA on that profile or on that sample I should say, to determine whose DNA it was.  That's what she was trying to tell you.  It's not that because it wasn't him, she couldn't determine who it was.

*Id.* at 67.  The Appellate Court (which the post-conviction court relied upon) concluded that the prosecutor's statements about the DNA evidence "accurately summarized the DNA expert's testimony and argued a reasonable inference based on other evidence at trial."  ECF 8-1, at 197.

The test for prosecutorial misconduct in the context of closing argument is "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)).  In the Fourth Circuit, in order to meet that standard, the remarks must have, in fact, been improper and must have prejudicially affected the defendant's substantial rights so as to have deprived him of a fair trial.  *United States v. Mitchell,* 1 F.3d 235, 240 (4th Cir. 1993).

Prosecutors (and all attorneys) enjoy considerable latitude in presenting arguments to a jury.  *Bates v. Lee*, 308 F.3d 411, 422 (4th Cir. 2002).  The adversary system allows a prosecutor to prosecute vigorously and to "strike hard blows," but not "foul ones."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  The nature of Petitioner's argument is a disagreement with the prosecutor's interpretation of the DNA expert's testimony.  Competing views of the evidence do not amount to a deprivation of fundamental fairness.  Because the prosecutor's argument was not improper, Petitioner's prosecutorial misconduct claim fails.

The post-conviction court's dismissal of Ground Three is neither contrary to nor an unreasonable application of federal law.  Ground Three is without merit and is dismissed.

### 4.   Ground Five

In Ground Five, Petitioner contends that his counsel was ineffective for failing to object to the jury instructions for second- and third-degree sex offense.  ECF 1, 11.  Respondent argues that Ground Five is without merit and should be dismissed.  ECF 17, at 35–48.

On December 5, 2013, Petitioner was indicted on fourteen counts.  ECF 8-1, at 17–20. Among the charges were five counts of second-degree sex offense (Counts Three, Four, Five, Six, and Seven), and four counts of third-degree sex offense (Counts Eight, Nine, Ten, and Eleven).[13]

---

[13] The indictment does not specify which unlawful acts pertain to which count.  The statutory language defining a second-degree sexual offense prohibits a sexual act "in which an object or part of an individual's body penetrates, however slightly, into another individual's genital opening or anus."  Md. Code Criminal Law Article ("CL") §§ 3-301(e)(1)(v), 3-306(a) (2002, 2012 Repl. Vol.).  The statutory language defining a third-degree sexual offense prohibits sexual contact,

On the second day of Petitioner's jury trial, the trial judge read the instructions to the jury. ECF 29-2, at 40–50. The instructions for second-degree sex offense, *id*. at 48, and third-degree sex offense, *id*. at 48–49, were an incorrect statement of the law. After the instructions were read, the prosecutor advised the trial judge that the instructions for second-degree sex offense omitted digital penetration, but Petitioner's counsel did not object and the instructions were not changed. ECF 29-1, at 50–51.

Ultimately the jury instructions deviated from the jury verdict form. The instructions for second-degree sex offense included the prohibited acts of fellatio, cunnilingus, analingus, and anal penetration. *Id.* at 48. However, the corresponding section on the verdict form limited the number of acts that qualified, and asked the jury:

> 5.) Do you find the Defendant Guilty or Not Guilty as to Second Degree Sex Offense (Digital - Vagina)?

> 6.) Do you find the Defendant Guilty or Not Guilty as to Second Degree Sex Offense (Digital - Anal)?

ECF 8-1, at 161. The jury checked "guilty" for both Counts Five and Six. ECF 8-1, at 239.

The instructions for third-degree sex offense defined the prohibited "sexual contact" as "penetration, however slight, by any part of a person's body, other than the penis, mouth, or tongue into the genital or anal opening." ECF 29-2, at 49. The corresponding section of the verdict form limited the number of acts that qualified, excluding digital penetration, and asked the jury:

> 9.) Do you find the Defendant Guilty or Not Guilty as to Third Degree Sex Offense (Cunnilingus)?

> 10.) Do you find the Defendant Guilty or Not Guilty as to Third Degree Sex Offense (Analingus)?

ECF 8-1, at 161. The jury checked "guilty" for both Counts Nine and Ten. *Id.* at 239.

---

described as "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of either party." CL §§ 3-301(f)(1), 3-307(a)(3).

According to the instructions given, second-degree sex offense does not include digital penetration, but Counts Five and Six were labeled "digital" on the verdict form. The correct Maryland pattern jury instruction for second-degree sex offense includes the act of "unlawful penetration," which is defined (in pertinent part) as including "part of the person's body." MPJI-Cr 4:29.6.

The instructions given to the jury for third-degree sex offense specifically excluded oral sex, but Counts Nine and Ten were labeled "cunnilingus" and "analingus" on the verdict form. The correct Maryland pattern jury instruction for third-degree sex offense defines "sexual contact" as "intentional touching of . . . genital or anal area . . . for the purpose of sexual arousal or gratification . . . ." MPJI-Cr 4:29.8.

Petitioner argued on direct appeal that his convictions for Counts Five, Six, Nine, and Ten should be reversed, but the Appellate Court did not reach the issue because Petitioner's trial counsel did not object to the jury instructions. ECF 8-1, at 85–87. In his post-conviction proceedings, like here, Petitioner argued that his counsel was ineffective for failing to object to the jury instructions. *Id.* at 122–24, 151–54. The post-conviction court denied the claim, finding that Petitioner's counsel was not deficient for failing to object. *Id*. at 200–202. Although Petitioner's trial counsel did not testify at the post-conviction hearing, the post-conviction court surmised that it was sound strategy not to object to the jury instructions because "the jury instructions as read were favorable to [Petitioner]" and they may have been to his benefit. *Id.* at 201. The post-conviction court also concluded that Petitioner failed to show that he was prejudiced because the instructions made it less likely that he would be convicted. *Id.*

The Supreme Court held in *United States v. Gaudin* that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element

of the crime with which he is charged." 515 U.S. 506, 522–23 (1995). Failure to properly instruct the jury on each element of the charged offense violates the Sixth Amendment's jury trial guarantee. *Neder v. United States*, 527 U.S. 1, 12 (1999). The second-degree sex offense jury instructions did not include a description of digital penetration. The third-degree sex offense jury instructions specifically excluded oral sex. Yet, Petitioner was convicted of two counts of second-degree offenses that were described as digital penetration on the verdict sheet and two counts of third-degree sex offenses that were described as oral sex on the verdict sheet. This would—on its face—appear to be error.

But the Supreme Court has also said that this type of instructional error is subject to harmless-error review. As the Court explained in *Neder*, it has "often applied harmless-error analysis to cases involving improper instructions on a single element of the offense." 527 U.S. 1, 9. Harmless error analysis is applicable even where the trial court completely fails to instruct the jury on a necessary element of the offense. *See id.* at 9–15. Where "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17.

The victim, D.F., testified at trial that during the sexual assault, Petitioner inserted three fingers into her anus and her vagina, ECF 29-1, at 101, and licked her vagina and anus. *Id.* at 105–106. The nurse who conducted the sexual assault kit testified that D.F. confirmed that Petitioner made oral contact with her vagina, *id.* at 134, and inserted his fingers into her vagina and her anus. *Id.* at 134, 135. D.F. gave no answer when the nurse asked if Petitioner made oral contact with her anus. *Id.* at 135. During the physical exam the nurse found swelling of the victim's labia and a tear in her rectum that was indicative of trauma. *Id.* at 129, 132. The laboratory analyst found two sperm on the anal swab from D.F.'s sexual assault kit. ECF 29-2, at 16.

The defense did not put on a case in chief.  *See* ECF 29-2, at 36–38.  Rather, during closing argument, Petitioner's counsel argued that D.F.'s story had credibility issues and Petitioner should be found not guilty because he was excluded as a contributor to the DNA sample.  *Id.* at 58–67.

The victim testified to evidence establishing each element of Counts Five, Six, Nine, and Ten.  Petitioner did not contest any specific elements of these offenses, though he did contest the victim's entire account of the sexual assault in argument only.  Objective evidence, the presence of sperm and physical injury, indicated that a sexual assault indeed occurred.  This evidence corroborated the victim's story.

The contested offenses are supported by such evidence that the verdict would have been the same if the jury had been correctly instructed on the law.  Because the instructional error at issue is subject to harmless error review, and the error was harmless, counsel's failure to object to the erroneous jury instructions did not prejudice Petitioner.[14]  Ground Five is without merit and is dismissed.

### 5.   Ground Seven

In Ground Seven, Petitioner contends that his trial counsel was ineffective for failing to file a motion for modification of sentence and a motion for a review of sentence by a three-judge panel.  Petitioner raised Ground Seven in his post-conviction petition.  ECF 8-1, at 154–58.  Respondent contends that Ground Seven lacks merit.  ECF 17, at 57–60.

Based on Petitioner's contradictory testimony at the post-conviction hearing, the post-conviction court concluded that Petitioner's claim that he instructed his trial counsel to file post-trial motions for modification of sentence and review of his sentence by a three-judge panel was

---

[14] The third-degree sex offenses (Counts Nine and Ten) merged for purposes of sentencing.  ECF 29-3, at 10.

not credible.  ECF 8-1, at 203.  Because Petitioner failed to prove that he requested his counsel file the sentence-review motions, the post-conviction court dismissed Ground Seven on the deficiency prong of the *Strickland* analysis.  *Id.*

As noted above, absent clear and convincing evidence to the contrary, the post-conviction court's factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).  Petitioner has failed to show that the post-conviction court unreasonably applied *Strickland* to the facts of his case. Ground Seven is without merit and is dismissed.

### 6.  Ground Eight

In Ground Eight, Petitioner contends that his post-conviction counsel was ineffective by failing to adequately argue and present his meritorious claims and contentions.[15]  Respondent contends that Ground Eight is not cognizable in federal habeas corpus review.  ECF 17, at 88.  The Court agrees.  Federal law explicitly prohibits relief based on ineffective assistance of post-conviction counsel.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").  While the Supreme Court has recognized that ineffective assistance of post-conviction counsel can serve as "cause" to excuse procedural defect, *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16–17 (2012)), the Supreme Court declined to "resolve whether the [*Martinez*] exception exist[ed] as a constitutional matter." *Martinez*, 566 U.S. at 9.  Therefore, as the Court interprets Petitioner as raising a stand-alone claim of ineffective assistance of post-conviction counsel, ECF 1, at 15–16, consistent with

---

[15] Specifically, he faults post-conviction counsel for: (1) not arguing that his trial attorney was ineffective for not filing Petitioner's habeas petition, ECF 1, at 14; (2) miscalculating Petitioner's *Hicks* date, ECF 1, at 15; (3) agreeing with the State that the DNA evidence was not exculpatory, ECF 1, at 15; (4) the State's belated response to the post-conviction petition, ECF 1, at 15; and (5) failing to present all the claims Petitioner wished his counsel to present, ECF 1, at 15–16.

28 U.S.C. § 2254(i), that claim is not cognizable on habeas review.  *See, e.g.*, *Vann v. Clendenion*, Civ. No. 119-01059(STA)(JAY), 2021 WL 5989019, at \*7 (W.D. Tenn. Dec. 17, 2021) ("To the extent [petitioner] purports to raise stand-alone challenges to post-conviction counsel's effectiveness, he has not stated cognizable claims."); *Emanuel v. Neven*, Civ. No. 216-01368(GMN)(GWF), 2020 WL 1451191, at \*7 (D. Nev. Mar. 25, 2020) ("Although *Coleman* and *Martinez* left open a constitutional question regarding a petitioner's right to effective counsel in post-conviction proceedings, an open question does not establish a cognizable habeas claim."). Petitioner's Ground Eight is dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability.  28 U.S.C. § 2253(c)(1).  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, the Court has denied the petition on the merits, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Upon a review of the record, this Court finds that Petitioner has not made the requisite showing.  The Court therefore declines to issue a certificate of appealability.  Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  Fed. R. App. P. 22.

## V.     CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be **DENIED**.  The Court will decline to issue a certificate of appealability.  A separate Order shall issue.

| | |
|---|---|
| February 7, 2024 | /s/ |
| Date | Brendan A. Hurson<br>United States District Judge |